Argued October 1, affirmed October 21, 1919.

## HALLBERG *v.* HARRIET.

### (184 Pac. 549.)

**Reformation of Instruments—Mortgage Assigned to Holders in Due Course Cannot be Reformed.**

1. Against persons to whom note and mortgage security were assigned, before maturity and without knowledge of defects, by payee on their agreement to furnish him a home thereafter, their obligation in which respect they have fulfilled, there can be no reformation of the assigned instruments; the assignees being holders in due course, who under Section 5890, L. O. L., hold the instruments free from any defenses which might have been available against the payee.

[As to assignment of mortgage and its effect, see note in 14 Am. Dec. 512.

As to right to reform description in deed or mortgage as against purchaser without notice, see note in Ann. Cas. 1918D, 147.]

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is a suit to reform a mortgage and an agreement indorsed upon the back of the promissory note

secured thereby, in order that the plaintiff may obtain credit thereon for a certain sewer assessment, amounting to $934.20. The substance of the complaint, reduced to narrative form, is about as follows:

On April 4, 1911, the plaintiff and Jacob Bezemer entered into a written agreement whereby the latter agreed to sell and plaintiff agreed to purchase a tract of land in the suburbs of Salem, for the sum of $12,000. By the terms of the writing, a payment of $200 was then made, and upon a further payment of $1,800, Bezemer was to convey the land to plaintiff who was to execute and deliver her note for $10,000, secured by a mortgage upon the property payable in three years, with interest at 6 per cent per annum. After the execution of the contract of April 4, 1911, it was discovered that, by a mutual mistake of the parties an important detail of the agreements had been omitted therefrom and in order to more fully express in writing their contract, they caused to be executed a supplemental agreement as follows:

"It is understood between the parties in the foregoing agreement that the purchase price of $12,000, is to include the sewer assessment now against the land and that if said sewer assessment, by virtue of a court decision, does not have to be paid, it shall be either refunded or endorsed on the note.

"(Signed)     JACOB BEZEMER.

"Witness:
       "NETTIE J. MILLER."

On April 18, 1911, they undertook to execute the terms of the contract, and in so doing, Bezemer executed a warranty deed to plaintiff for the property, and the latter having made the preliminary payments agreed upon, executed her promissory note for $10,000, and a mortgage upon the property, in which she was joined by her husband, but the mortgage contains no

covenant like the supplemental agreement above set out. Under the terms of the mortgage, certain sales have been made of portions of the land, and such tracts have been released from the lien thereof. On April 18, 1914, plaintiff by her agent, R. C. Hallberg, agreed with the defendant Cornelia B. Harriet for an extension of time for the payment of the balance due on the note, to April 18, 1915, and defendant's attorney, in reducing such extension agreement to writing on the back of the note, made a mistake and inserted therein the sum of $2,820, as the balance due, whereas, in fact, it was no more than $1,545.14, after deducting $934.20, on account of the sewer assessment, which had been held to be void, in a decision of the Supreme Court, filed June 4, 1912. Plaintiff signed said erroneous statement on the note by mistake and inadvertence. Neither party discussed or agreed to fix the amount then due on the note, and there was no consideration for waiving the terms of the original agreement respecting the sewer assessment. Bezemer assigned the note and mortgage to his three children, Cornelia B. Harriet, Anna Eberman and Klaus Bezemer, and Klaus Bezemer has sold his interest therein to Cornelia B. Harriet and Anna Eberman has since died and the defendants claim to be the owners of the note and mortgage, which they took with full knowledge and notice of the terms of the agreement between plaintiff and Bezemer, subject to all the equities and defenses thereto and plaintiff has demanded credit upon the note for the sewer assessment, which has been refused. Plaintiff is ready, able and willing to pay the balance due on the note, and prays for a decree reforming the mortgage so that it shall include the supplemental contract, and the agreement on the note so that it shall not undertake to state the bal-

ance then due, and that upon payment of the sum due after deducting the amount of the sewer assessment and the interest thereon, that defendants be required to satisfy and cancel the mortgage.

The answer denies the execution of the supplemental agreement, or any knowledge or notice thereof, and pleads several affirmative defenses, among which are, that on July 1, 1912, Jacob Bezemer for a good and valuable consideration sold the note and mortgage to Cornelia B. Harriet, Anna Eberman and Klaus Bezemer, who were innocent and *bona fide* purchasers thereof, in the regular course of business, without any knowledge, information or belief as to any of the alleged equities set forth as existing between plaintiff and Jacob Bezemer. It is also alleged, by way of estoppel, that on April 18, 1914 (being the occasion mentioned in the complaint, when the extension agreement was indorsed on the note), Klaus Bezemer refused to grant any further time for the payment of his share of the debt, and plaintiff then paid to said Bezemer the entire balance due for his one third of the note, with interest thereon, without making any claim for a deduction on account of the sewer assessment, and that such payment would now require these defendants to suffer more than their just share of such deduction. It is further averred that what occurred on April 18, 1914, at the time when the extension agreement was indorsed on the note and signed by plaintiff, by her agent, constituted an account stated. The reply joins issue upon the affirmative defenses. A trial was had, resulting in a decree dismissing the suit, from which plaintiff appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Myron E. Pogue.*

For respondents there was a brief over the names of *Mr. James G. Heltzel* and *Mr. Max Gehlhar,* with an oral argument by *Mr. Heltzel.*

BENSON, J.—There is a very decided conflict in the evidence as to the execution of the supplemental agreement mentioned in the pleadings. Jacob Bezemer admits that the signature thereto is his, but disclaims any knowledge as to the circumstances under which he signed it, and insists very positively that there was never any understanding between them in regard to the sewer assessment, and is positive that it was never discussed between them. R. C. Hallberg is equally positive that it was fully discussed and assented to, and that it was cheerfully signed by Bezemer. Other witnesses testify that it was signed by Bezemer in John H. McNary's law office, and in their presence. The note and mortgage were executed on April 18, 1911, maturing April 18, 1914. Bezemer assigned the note and mortgage to his three children in July, 1912, upon their agreement to furnish him a home thereafter and they have fulfilled their obligation in that respect. The evidence is uncontradicted that they had no knowledge of the supplemental agreement until late in the fall of 1915, long after the maturity of the note. On April 18, 1914, the date of the maturity of the note, plaintiff sought an extension of time thereon for another year. Mrs. Harriet, who was acting as the attorney in fact for her brother, Klaus Bezemer, and her sister, Anna Eberman, informed plaintiff's husband, R. C. Hallberg, who has acted throughout as his wife's agent, that Klaus Bezemer would not consent to any extension of time, and must have his share of the debt, with interest, at once, but that she and her sister would extend the time of payment of their portions until

April 18, 1915, if plaintiff would agree to pay 8 per cent interest instead of 6 per cent. Thereupon, the attorney for Mrs. Harriet wrote upon the back of the note the following memorandum, which was signed by Mr. Hallberg:

"Salem, Ore., Apr. 18, –14.
"In consideration of the extension of the time of the payment of this note until Apr. 18, 1915, I agree to pay 8% int. on the deferred payment of $2820.00.

"MARIE HALLBERG.
"By R. C. HALLBERG."

At the same time Hallberg paid one third of the amount then due, with the accrued interest thereon, with the understanding that it was to fully satisfy Klaus Bezemer for his share of the note. No reference was then made to the sewer assessment by Hallberg, and Mrs. Harriet was totally ignorant of any agreement in relation thereto. Why Hallberg never mentioned it during the years that he was making payments upon both principal and interest; why, when he paid the share belonging to Klaus Bezemer, on April 18, 1914, he paid the same in full, with interest, and claimed no deduction on account of the sewer assessment, it is difficult to comprehend, and is not satisfactorily explained. However, it is not necessary for us to weigh the conflicting evidence in these particulars, since, in any event, the defendants are holders in due course of the note and mortgage, and hold them free from any defenses which might have been available against the payee: Section 5890, L. O. L.

The decree of the lower court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.